UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIANE B. DAILEY,

                          Plaintiff,

v.                                                      5:14-CV-1518
                                                        (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State St., Ste. 300
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                     DAVID B. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16)  This case has proceeded in accordance with General Order

18.

        Currently before the Court, in this Social Security action filed by Diane B. Dailey

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on March 13, 1959.  (T. 149.)  She received a GED.  (T. 182.)  Generally, Plaintiff's alleged disability consists of diabetes, migraines, chronic obstructive pulmonary disease ("COPD"), asthma, and arthritis.  (T. 181.)  Her alleged disability onset date is November 10, 2009. (T. 149.) Her date last insured is December 31, 2014.  (T. 177.)  She previously worked as a janitor.  (T. 182.)

### B.    Procedural History

On February 29, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 60.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On July 11, 2013, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 32-53.)  On September 12, 2013, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-31.)  On October 15, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 16-26.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since November 10, 2009.  (T. 15.)  Second, the ALJ found that Plaintiff had the severe impairments of migraine headaches, cervical spine degenerative disc disease with radiculopathy, bilateral shoulder degenerative joint disease, and lumbar spine degenerative disc disease.  (T. 15-17.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19-20.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work.  (T. 20.)[1]  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 25.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC was not supported by substantial evidence because the ALJ allocated inadequate weight to Plaintiff's treating physician.  (Dkt. No. 13 at 3-11 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence.  (*Id.* at 11-13.)  Third, and

---

[1]         Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

lastly, Plaintiff argues the ALJ's step five determination was unsupported by substantial evidence. (*Id.* at 13-14.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 14 at 4-15 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility determination was supported by substantial evidence. (*Id.* at 15-21.) Third, and lastly, Defendant argues the ALJ's step five determination was appropriate. (*Id.* at 21-22.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner]

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Treating Physician, Ethan G. Flaks, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth her reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also*

SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

In June of 2013, Dr. Flaks completed a medical source statement. (T. 464-468.) Dr. Flaks stated Plaintiff suffered from diabetes, hypertension, hypothyroid, and hyperlipidemia. (T. 464.)[2] Dr. Flaks stated that treatment allows Plaintiff to function normally. (*Id.*) He indicated medication side effects included chronic fatigue, nausea, vomiting, and sleep disturbance. (*Id.*) Dr. Flaks stated Plaintiff suffered from migraines which were moderately intense, meaning they inhibited, but did not wholly prevent, usual activity. (*Id.*) Dr. Flaks indicated symptoms from Plaintiff's headaches included the following: nausea, vomiting, photophobia, inability to concentrate, exhaustion, vertigo, visual disturbance, and impaired appetite. (*Id.*)

Dr. Flaks provided answers to questions regarding the frequency, duration, and cause of Plaintiff's migraines. Dr. Flaks opined Plaintiff had three to four headaches per week, which lasted sixty minutes to twenty-four hours. (*Id.*) Dr. Flaks opined Plaintiff's headaches could reasonably be caused by anxiety, tension, and hypertension. (*Id.*) Dr. Flaks stated Plaintiff's headaches were triggered by bright lights, strong odors, noise, and stress. (*Id.*) Dr. Flaks stated bright lights and noise would make Plaintiff's headaches worse. (*Id.*) Dr. Flaks opined Plaintiff's headaches were made better by laying down, taking medication, a quiet place, a dark room, and cold packs. (*Id.*) Dr.

---

[2] Of note, Dr. Flaks's medical source statement did not list migraine headaches under diagnosis, but under symptoms. (T. 464.) Dr. Flaks subsequently indicated Plaintiff suffered from migraine headaches. (*Id.*) The medical source statement completed by Dr. Flaks posed questions specifically about "headaches" in questions numbered seven through 16. (T. 464-465.) Questions numbered 17 through 21 ask about functional limitations as a result of Plaintiff's "impairments." (T. 465-467.)

Flaks indicated that Plaintiff would be precluded from performing basic work activities and would need a break from the workplace when she had a headache. (*Id.*)

Dr. Flaks opined to Plaintiff's functional limitations in the workplace due to her "impairments." In his June medical source statement, Dr. Flaks stated Plaintiff could sit for one hour at a time and could stand for 15 minutes at a time before needing to change position. (T. 466.) Dr. Flaks indicated Plaintiff could sit "about [four] hours" and "at least [six] hours." (*Id.*) At the request of the ALJ, Dr. Flaks attempted to clarify his opinion regarding Plaintiff's ability to sit, stand, and walk. (T. 148.) Dr. Flaks provided another medical source statement in August of 2013, in which he again indicated Plaintiff could sit "about [four] hours" and "at least [six] hours," and further, he indicated Plaintiff could stand/walk "about [two] hours" as long as she had frequent breaks to rest. (T. 545.) In his August statement, Dr. Flaks wrote that Plaintiff's capacity to sit, stand, and walk were "estimates of [her] capability in lieu of her medical problems and after discussing them with [her]. They have not been assessed in physical actuality." (*Id.*) In his August statement, Dr. Flaks further opined Plaintiff required a position that would allow her to shift positions at will. (T. 466.) Dr. Flaks opined Plaintiff could frequently lift and carry less than ten pounds, could occasionally lift and carry ten pounds, could rarely lift and carry 20 pounds, and should never lift and carry 50 pounds. (T. 466.)

Dr. Flaks provided non-exertional limitations as well. Dr. Flaks opined Plaintiff could occasionally: twist; stoop; bend; crouch; and, squat. (*Id.*) He opined Plaintiff could rarely climb ladders or stairs. (*Id.*) He opined Plaintiff could frequently handle and finger, but could rarely reach with her left upper extremity and never reach with her right upper extremity. (T. 467.) Dr. Flaks opined Plaintiff would be off task more than

20% of the workday.  (*Id.*)  Dr. Flaks opined Plaintiff would be absent more than four days per month.  (*Id.*)

The ALJ afforded Dr. Flaks's medical source statement "limited weight."  (T. 22.)  The ALJ reasoned the limitations expressed in Dr. Flaks's statement were not objective, but instead based primarily on Plaintiff's subjective complaints.  (*Id.*)  The ALJ also reasoned Dr. Flaks's statement was inconsistent with other opinions in the record; specifically, the statement was inconsistent with the opinions of Robi Rosenfeld, D.O. and Justin Beabes, D.P.M., to whom the ALJ afforded "some weight."  (*Id.*)  The ALJ further reasoned her RFC determination was consistent with Dr. Flaks's opinion regarding Plaintiff's ability to lift and carry and Dr. Flaks's limitations regarding the need for breaks would be accommodated by usual allowable breaks.  (T. 23.)[3]

Plaintiff argues the ALJ erred in affording "limited weight" to Dr. Flaks's opinion; specifically, Plaintiff raises four areas in which the ALJ failed to properly evaluate Dr. Flaks's opinion.  (Dkt. No. 13 at 6-11 [Pl.'s Mem. of Law].)

First, Plaintiff argues the ALJ erred in discrediting Dr. Flaks's medical statement because it was based, in part, on subjective complaints.  (Dkt. No. 13 at 6-7 [Pl.'s Mem. of Law].)  In support of her argument, Plaintiff relies on the Regulations which state that statements made by a plaintiff to her medical sources are evidence and as such, should be considered by the ALJ in making her determination.  20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3).  Contrary to Plaintiff's argument, the ALJ did precisely that.  The ALJ

---

[3]       The ALJ reasons that Dr. Flaks's opinion regarding Plaintiff's ability to lift and carry is "essentially a light level of exertion."  (T. 23.)  Dr. Flaks opined Plaintiff could "frequently" lift/carry less than 10 pounds, "occasionally" lift/carry 10 pounds, and "rarely" lift/carry 20 pounds.  (T. 466, 545.)  Light work required the "frequent" lifting and carrying of up to 10 pounds and "occasional" lifting and carrying of up to 20 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Dr. Flaks's opinion is not consistent with a light level of exertion.  Plaintiff does not argue that the ALJ erred in this conclusion, therefore, the Court will not address this apparent inconsistency.

took into consideration, as evidence, Plaintiff's subjective complaints when assessing Dr. Flaks's statement.

The ALJ reasoned that Dr. Flaks's statement could not constitute an objective medical report because it was based on Plaintiff's subjective complaints.  (T. 22.)  The ALJ ultimately concluded that Dr. Flaks's statement was not based on objective medical evidence, which is the proper legal standard under the Regulations. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").  The Regulations define objective medical evidence as medical signs and laboratory findings.  20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1).  Therefore, under the Regulations, the ALJ properly concluded that Dr. Flaks's opinion was not entitled to controlling weight because the opinion was based on subjective reports, not objective findings such as medically acceptable clinical and laboratory diagnostic techniques. The ALJ properly took Plaintiff's subjective complaints into consideration as evidence in making such a determination.

To be sure, a treating physician's opinion should not be undermined because the opinion relies on a plaintiff's subjective complaints, so long as the opinion is adequately supported by medical evidence.  *See Gorman v. Comm'r of Soc. Sec.*, No. 5:12-CV-0939, 2013 WL 4049978, at *4 (N.D.N.Y. Aug. 9, 2013) (reasoning the ALJ did not err in affording a treating physician's opinion less than controlling weight were the opinion was not adequately supported by medical evidence and based, in large part, on plaintiff's subjective complaints).  As Defendant points out in her brief, the Second Circuit has

reasoned that treating source's opinions which are based primarily on a plaintiff's subjective complaints, rather than the treating source's medical observations, can be afforded less weight. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (affirming ALJ's determination that VA finding of 70% disability "relied heavily on [plaintiff's] subjective complaints rather than objective medical evidence."); *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) ("Much of what [plaintiff] labels medical opinion was nor more than a doctor's recording of [plaintiff's] own reports of pain."); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to give less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably found to be less than fully credible).

An ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence. *Major v. Astrue*, No. 12-CV-304S, 2013 WL 2296306, at *5 (W.D.N.Y. May 24, 2013) (the Court held that an ALJ's determination that treating physician's medical source statement was not based on objective medical evidence, and only afforded the opinion "little weight," was proper where the physician completed the medical source statement with references to plaintiff's own descriptions and quotes from plaintiff regarding her pain); *Ford v. Astrue*, No. 1:06-CV-1227 LEK, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010) ("it was entirely appropriate for the ALJ to differentiate between those portions of [the treating physician's] report based on objective tests and those supported only by [p]laintiff's subjective report").

Subjective complaints can be supported by objective medical evidence and findings; however, subjective complaints, by their very nature, cannot constitute

objective medical evidence. Therefore, the ALJ's determination that Dr. Flaks's statement was based, in part, on Plaintiff's subjective complaints, and therefore could not constitute an objective report, was proper. In addition, the ALJ did not discredit the whole of Dr. Flaks's statement solely based on Dr. Flaks's reliance on Plaintiff's subjective complaints. The ALJ also relied on other medical evidence in the record which she determined was inconsistent with the statement. (T. 22-23.)

In the alternative, Plaintiff argues, the ALJ read Dr. Flaks's statement out of context. (Dkt. No. 13 at 7 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ erred in dismissing the entirety of Dr. Flaks's opinion base on Plaintiff's subjective complaints because only Plaintiff's ability to sit, stand, and walk were based on those complaints; and it was error for the ALJ to dismiss opinions regarding Plaintiff's other functional limitations which were based on her impairment of migraine headaches. (*Id.*) To be sure, Dr. Flaks clearly indicated in his August 2013 statement that the limitations he imposed on Plaintiff's ability to sit, stand, and walk were "estimates" based on Plaintiff's "medical problems and after discussing these with [Plaintiff.]" (T. 545.) Dr. Flaks stated Plaintiff's limitations in her ability to sit, stand, and walk had "not been assessed in physical actuality." (*Id.*)

For the reasons stated above, the ALJ did not err in taking into consideration the role Plaintiff's subjective complaints played in Dr. Flaks's overall assessment. The ALJ relied on multiple factors, all in accordance with the Regulations and discussed in more detail herein, in assigning weight to Dr. Flaks's opinion.

Second, Plaintiff argues the ALJ erred in her determination that Dr. Flaks's opinion was "speculative," because evidence in the record supported Dr. Flaks's

opinion.  (Dkt. No. 13 at 7-8 [Pl.'s Mem. of Law].)  In support of her argument, Plaintiff

cites to medical evidence in the record, such as hospitalizations and medical

appointments, which she claims provide support for her decision.  (*Id.*)  However, under

the substantial evidence standard of review, it is not enough for Plaintiff to merely

disagree with the ALJ's weighing of the evidence or to argue that the evidence in the

record could support her position.  Plaintiff must show that no reasonable factfinder

could have reached the ALJ's conclusions based on the evidence in record.  *See Brault*

*v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Warren v.*

*Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (The substantial evidence standard means

once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would

have to conclude otherwise").  After a careful review of the record, this Court cannot

come to the conclusion that a reasonable factfinder would have to conclude otherwise.

Here, the ALJ's determination to afford Dr. Flaks's opinion "limited weight" was

supported by substantial evidence.  As discussed above, the ALJ did not err in taking

into consideration the role Plaintiff's subjective complaints played in the limitations Dr.

Flaks's indicated on the form.  Further, the ALJ reasoned Dr. Flaks's limitations were

inconsistent with other medical evidence in the record, specifically, the opinions of Dr.

Rosenfeld and Dr. Beabes.

Dr. Rosenfeld performed a consultative examination on May 2, 2012.  (T. 422.)

Dr. Rosenfeld listed Plaintiff's diagnosis as: degenerative joint disease of the shoulders,

right hip, and left knee; diabetes mellitus; hypertension; asthma; emphysema; anemia;

hypothyroidism; and migraine headaches.  (T. 425.) Dr. Rosenfeld performed a

complete physical exam and found Plaintiff's cervical and lumber spine had full range of

motion. (T. 423.) Dr. Rosenfeld's exam indicated Plaintiff had decreased range of motion in her shoulders and full range of motion in her elbows, wrists, and hands. (*Id.*) Dr. Rosenfeld observed Plaintiff had reduced range of motion in her right hip, but full range of motion in her left. (*Id.*) Further, Dr. Rosenfeld observed Plaintiff had decreased range of motion in her left knee, but full in her right. (*Id.*) Dr. Rosenfeld opined Plaintiff had "mild" restrictions for walking due to knee pain; "moderate" restrictions for squatting and kneeling due to knee pain; and she should avoid smoke, dust, and known respiratory irritants. (T. 426.)

Dr. Beabes, Plaintiff's podiatrist, provided a medical source statement dated June 17, 2013. (T. 463.) Dr. Beabes treated Plaintiff for bunions and performed surgery to relieve bunion pain. (T. 461.) In his medical source statement, Dr. Beabes opined, once healed from bunion surgery, Plaintiff could sit, stand, and walk at least six hours each in an eight hours work day. (T. 462.) Dr. Beabes opined Plaintiff could frequently lift and carry up to ten pounds, and could occasionally lift and carry 20 pounds. (*Id.*) Dr. Beabes opined Plaintiff could frequently perform all non-exertional activities. (*Id.*) Dr. Beabes opined Plaintiff's foot impairment would not cause her to be absent from work. (T. 463.)

The medical findings and observations of Dr. Rosenfeld and Dr. Beabes support the ALJ's determination that Plaintiff could perform light work. The exertional limitations placed on Plaintiff by Dr. Rosenfeld and Dr. Beabes are consistent with the exertional and non-exertional requirements of light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Rosenfeld performed a physical examination and based his finding on his examination of Plaintiff. (T. 422-426.) Dr. Beabes based his findings on his medical

experience treating Plaintiff. (T. 461-463.) Further, Plaintiff testified that she was actively seeking work in the cleaning field, sales field, and at McDonalds and would have taken a job had she been offered one. (T. 52-53.) These positions are also consistent with the exertional and non-exertional requirements of light work. Therefore, although Plaintiff cited to evidence in the record which could be read to support her opinion, substantial evidence supported the ALJ's determination that Dr. Falks's opinion was inconsistent with other medical evidence in the record and substantial evidence supported the ALJ's RFC determination.

Third, Plaintiff argues "the ALJ's determination that [Dr. Flaks's opinion] is inconsistent with the other opinion evidence of the record is . . . not a good reason to discount the treating physician's opinion." (Dkt. No. 13 at 8 [Pl.'s Mem. of Law].) However, the Regulations clearly state: the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the] case record.*" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added). Therefore, under the Regulations inconsistency with the record is "good reason" to discount the treating physician's opinion. What Plaintiff appears to be arguing is the ALJ improperly relied on inconsistencies between Dr. Beabes's opinion and Dr. Flaks's opinion because the ALJ should not compare limitations based on Plaintiff's foot impairments to limitations based on Plaintiff's migraine headaches. (Dkt. No. 13 at 8-9 [Pl.'s Mem. of Law].)

Here, the ALJ reasoned that not only were Dr. Flaks's limitations regarding Plaintiff's ability to sit, stand, and walk based on Plaintiff's subjective complaints, they

were also inconsistent with Dr. Rosenfeld's and Dr. Beabes's limitations, which were based on medical observation and examinations. The ALJ did not err in comparing the two opinions, nor did she err in relying on the inconsistencies in affording Dr. Flaks's limitations less weight. Further, "[i]t is the role of the Commissioner, not the reviewing court, to resolve evidentiary conflicts," *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

The ALJ concluded that although a sever impairment, Plaintiff's migraines were "not frequent and severe enough" to preclude Plaintiff from working. (T. 23.) The ALJ specifically reasoned that despite suffering from migraines since she was a teenager, Plaintiff was able to work at substantial gainful employment levels; there was no objective medical evidence to indicate her migraines worsened; Dr. Flaks opined Plaintiff's headaches did not prevent her from engaging in usual activity; and Plaintiff was able to successfully testify at the hearing despite having a migraine that day. (T. 23.)

The ALJ properly concluded Plaintiff's migraines were not so severe as to prevent all work because the record supported the ALJ's determination. Plaintiff reported she suffered from migraines since the age of fourteen and experienced eight to ten a year. (T. 257.) The record indicated Plaintiff sought emergency room treatment for migraines in 2005, 2007, and 2009; however, Plaintiff was also able to work at that time and the records indicated Plaintiff's migraines were relieved with medication. (T. 257, 269-270, 271-272, 272-273, 274-275, 277, 284.) Therefore, the ALJ did not err in taking into consideration the fact that Plaintiff was able to work during a time when she

suffered from migraines and the medical record did not indicate Plaintiff's condition worsened.  *See Zokaitis v. Astrue*, No. 1:10-CV-30, 2010 WL 5140576, at *12 (D. Vt. Oct. 28, 2010) *report and recommendation adopted,* No. 1:10-CV-0030, 2010 WL 5140063 (D. Vt. Dec. 13, 2010) *aff'd sub nom.*, 465 F. App'x 17 (2d Cir. 2012) (finding that ALJ did not err in determining plaintiff could perform her past relevant work where she suffered from her medical impairments at the time she worked and the medical evidence failed to indicate her conditions changed significantly since she first became affected by them).

Fourth, Plaintiff argues the ALJ failed to properly follow the Regulatory factors in her evaluation of Dr. Flaks's opinion; specifically, the ALJ failed to take into consideration the length of treatment relationship and evidence from Syracuse Orthopedic Specialists which supported his opinion.  (Dkt. No. 13 at 10-11 [Pl.'s Mem. of Law].)  Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  As already discussed herein, the ALJ's determination to afford Dr. Flaks's opinion "limited weight" was supported by substantial evidence and the ALJ's failure to specifically mention in her decision the length of Dr. Flaks's treatment relationship was harmless because the ALJ's "reasoning and adherence" to the Regulations was clear.[4]

---

[4]       The ALJ specifically listed the "treating physician" Regulation in her decision, thus indicating she was aware of the Regulatory factors and requirements.  (T. 20)  Further, it is clear from the

Plaintiff's argument that the ALJ failed to consider evidence which Plaintiff asserts supports her argument is without merit. The ALJ considered the medical evidence supplied by Stephen Robinson, M.D. with Syracuse Orthopedic Specialists and afforded the opinion "little weight." (T. 23.) Once again, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. *See Brault*, 683 F.3d at 448 (plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record).

Therefore, for the reasons stated herein, the ALJ properly afforded the medical source statement completed by Dr. Flask "limited weight," and remand is not recommended.

### B. Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

---

decision that the ALJ reviewed all of Dr. Flaks's medical records, therefore, she was aware of the length of his treatment relationship with Plaintiff. The ALJ also referred to Dr. Flaks as Plaintiff's "primary care provider," thus indicating she was aware of his role as Plaintiff's treating physician. (T. 22.)

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including with respect to the severity of a claimant's symptoms." *Cichocki*, 534 F. App'x at 75.

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (T. 24.) In making her credibility determination the ALJ relied on Plaintiff's testimony, her receipt of unemployment benefits, and objective medical evidence in the record. (*Id.*) Specifically, the ALJ relied on Plaintiff's testimony that she had a migraine the day of the hearing, but took medication and was able to concentrate, answer

questions, "deal with the light," and be socially appropriate.  (*Id.*)  The ALJ further relied

on Plaintiff's receipt of unemployment benefits and that she actively sought

employment, which the ALJ reasoned where not determinative with respect to the

ultimate question of disability, but which did "little to enhance her credibility."  (*Id.*)

Further, the ALJ relied on Plaintiff's consultative examination and Plaintiff's testimony

that she could hold a cigarette as indicative that her testimony regarding limitations in

her ability to use her hands was not credible.  (*Id.*)  Lastly, the ALJ noted that a doctor

expressed concern that Plaintiff's presentation of pain was "somewhat unreliable" and

suspicious for pain-seeking activity.  (*Id.*)

Plaintiff argues the ALJ erred in her credibility assessment.  (Dkt. No. 13 at 11-13

[Pl.'s Mem. of Law].)  First, Plaintiff argues the ALJ should not have taken her personal

observations into consideration when making a credibility assessment.  (*Id.* at 11-12.)

However, the ALJ did not discredit Plaintiff's testimony based on her observations

alone.  While an ALJ may consider a claimant's "physical demeanor" at the hearing in

assessing the claimant's credibility, "such observations should be assigned only limited

weight." *Snyder v. Barnhart*, 212 F. Supp. 2d 172, 179-80 (W.D.N.Y. 2002) (citing

*Schaal,* 134 F.3d at 502.)  The ALJ's personal observations of Plaintiff at the hearing

were but one factor she took into consideration in her overall credibility assessment.

Second, Plaintiff argues the ALJ erred in discrediting Plaintiff for receiving

unemployment benefits and attempting to find employment.  (Dkt. No. 13 at 12 [Pl.'s

Mem. of Law].)  As stated by Defendant, the ALJ "reasonably deduced from Plaintiff's

testimony that she believed she could perform [] light-to-medium exertional positions."

(Dkt. No. 14 at 17 [Def.'s Mem. of Law].)  Several courts in this Circuit have concluded

that the collection of unemployment benefits during the period of alleged disability was properly considered by an ALJ when assessing a plaintiff's credibility. *See Felix v. Astrue,* 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); *Plouffe v. Astrue,* 3:10-CV-1548, 2011 WL 6010250, at *22 (D.Conn. Aug.4, 2011) (quoting from August 9, 2010 Social Security Administration Memorandum to the effect that: " '[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.' "); *Jackson v. Astrue,* 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov.10, 2009) ("Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.").  The ALJ did not determine that Plaintiff's receipt of unemployment benefits was "proof positive" that she was not disabled, the ALJ considered Plaintiff's claim for unemployment as part of her overall credibility assessment.  Therefore, the ALJ did not err in taking into consideration Plaintiff's receipt of unemployment benefits.

Third, Plaintiff argues the ALJ "improperly attack[ed]" Plaintiff's credibility because she smoked cigarettes.  (Dkt. No. 13 at 12-13 [Pl.'s Mem. of Law].)  Plaintiff relies on the holding in *Goff v. Astrue*, 993 F.Supp. 2d 114 (N.D.N.Y. 2012).  However,

the Court in *Goff* held that the ALJ improperly relied on plaintiff's failure to cease smoking as an indication plaintiff failed to follow prescribed treatment. *Goff*, 993 F.Supp. 2d at 127-129. The holding in *Goff* does not apply to the case at hand. Here, the ALJ reasoned that Plaintiff's ability to smoke cigarettes, and therefore handle small objects, was inconsistent with her testimony that she could not handle a pen, not that she failed to follow prescribed treatment. (T. 24.) Therefore, the ALJ's credibility determination was proper. The ALJ followed the factors outlined in the Regulations and the ALJ did not err in her evaluation of Plaintiff's receipt of unemployment benefits, her demeanor at the hearing, or her smoking habits.

### C.    Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

At step five the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 25.) In making her step five determination the ALJ relied on "the Grids." (*Id.*) Plaintiff essentially argues she had significant non-

exertional limitations, imposed by Dr. Flaks, that would require the ALJ to elicit testimony of a vocational expert ("VE") as to the number of jobs Plaintiff could perform. (Dkt. No. 13 at 13-14 [Pl.'s Mem. of Law].)  This Court found no error in the ALJ's assessment of Dr. Flaks's opinion, therefore the ALJ did not fail to include additional non-exertional impairments in her RFC determination.  Plaintiff does not argue the ALJ should have called on the testimony of a VE based on her RFC limiting Plaintiff to a full range of light work.  Therefore, the ALJ's step five determination was proper and remand is not recommended.

**ACCORDINGLY**, based on the findings above, it is

  **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

  Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  February 18, 2016

            William B. Mitchell Carter
            U.S. Magistrate Judge